**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LESLIE R. MITCHELL,<br><br>Plaintiff,<br>v.<br><br>K. BRITTAIN,<br><br>Defendant. | No. 4:22-CV-00619<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**DECEMBER 6, 2022**

Plaintiff Leslie R. Mitchell is currently confined at the State Correctional Institution in Frackville, Pennsylvania (SCI Frackville). He filed the instant *pro se* Section 1983[1] action claiming that the superintendent of the prison violated his Eighth Amendment rights. Presently pending is Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendant's motion to dismiss but permit Mitchell to amend his complaint.

## I. BACKGROUND

According to Mitchell, on the evening of October 18, 2021, he was lying down on his bed when smoke began to fill his cell.[2] He recalls that he turned over and saw fire coming out of an electrical socket and an extension cord that was

---

1 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

2 Doc. 1 ¶¶ 6, 9.

plugged into the socket.[3] Mitchell alleges that he "immediately pulled the extension cord out of the socket" and "jumped into action" to put out the fire by trying to smother it with clothing that was hanging nearby.[4] Mitchell's cellmate called for assistance, and eventually a correctional officer, the block sergeant, and two security officers arrived at Mitchell's cell.[5] The correctional officer arrived first, letting Mitchell and his cellmate out of the cell.[6] One of the two security officers, who arrived last, brought a video camera and recorded the event.[7]

Eventually the fire was extinguished.[8] The security officers then confiscated several items (a burnt robe, a burnt and melted extension cord, and an amplifier) and—after being asked by the inmates for grievance forms—told Mitchell and his cellmate that any grievances they wished to file would have to wait until after an investigation was conducted.[9] Mitchell alleges that, after waiting months to hear about the results of the investigation, he submitted an inmate request form to defendant Superintendent Kathy Brittain and the security department to inquire about the investigation and to recover his confiscated property.[10] Mitchell does not state whether he received a response to this request.

---

3 *Id.* ¶ 10.
4 *Id.* ¶¶ 12-13.
5 *Id.* ¶¶ 13-16.
6 *Id.* ¶¶ 13-14.
7 *Id.* ¶ 16; *id.* at p. 5.
8 *See* Doc. 1 at p. 7.
9 *Id.* ¶¶ 17-19.
10 *Id.* ¶¶ 20-21.

On December 23, 2021, Mitchell filed a formal grievance (form DC-804 Part 1).[11] He incorporated a copy of this grievance into the instant complaint.[12] In the grievance, he describes the fire and the events surrounding it much like the incident is described in his complaint.[13] He does not, however, state what type of claim he is asserting, against whom he is asserting it, or what relief he is seeking from prison officials.[14] Approximately one month later, grievance coordinator J. Newberry denied Mitchell's grievance as untimely.[15] Mitchell claims that he submitted a request form to Newberry, explaining that he and his cellmate immediately requested grievance forms but were told by security that they could not file grievances until after the investigation was completed, so that is why his grievance was not filed until several months after the incident.[16] Once again, Mitchell does not explain the outcome of this request to staff member. Nor does it appear that Mitchell appealed the initial grievance denial to the Facility Manager or to final review with the Secretary's Office of Inmate Grievances and Appeals.

---

11 *See id.* ¶ 22; *id.* at p. 7. Mitchell claims that he filed his grievance on December 23, 2021, but the response from the grievance coordinator states that the grievance was filed on January 10, 2022. *See id.* at p. 8. At the Rule 12(b)(6) stage, the plaintiff's allegations must be taken as true, so the Court will use the filing date Mitchell provided.

12 *See id.* at p. 7.

13 *See id.*

14 *See id.* It is possible that Mitchell only provided the first page of his grievance and that there were additional pages when it was originally filed at SCI Frackville. However, because Mitchell avers that he attached "a true and correct copy of the grievance" to his complaint, *see id.* ¶ 22, this possibility seems remote.

15 *See id.* ¶ 22; *id.* at p. 8.

16 Doc. 1 ¶¶ 24-26.

Mitchell alleges that, after the incident, no "inspection or wire testing" was performed to mitigate the risk of a future fire.[17] He also maintains that he was "forced to continue living in the smoke[-]filled cell" where he was subjected to smoke and fumes "for months."[18] Mitchell does not explain whether the electrical socket was still malfunctioning and emitting smoke, or if his cell simply continued to smell like smoke following the October 18 incident. In any event, he avers that, following the incident, he experienced "heightened anxiety, fear, tightness in his chest, muscle pain, inability to sleep, depressi[on], and hypertension"; had to seek "psychological help" from a prison doctor; and was diagnosed with depression and anxiety.[19]

Mitchell names superintendent Brittain as the sole defendant, suing her in both her individual and official capacity.[20] He brings a single Section 1983 claim against Brittain that appears to sound in Eighth Amendment deliberate indifference to prisoner health and safety, likely via a theory of supervisory liability.[21] Mitchell seeks $30,000 in compensatory damages.[22]

Brittain moves to dismiss Mitchell's complaint under Federal Rule of Civil Procedure 12(b)(6).[23] Brittain's motion is fully briefed and ripe for disposition.

---

17 *Id.* ¶¶ 29.
18 *Id.* ¶ 30.
19 *Id.* ¶¶ 31-32.
20 *See id.* ¶ 2.
21 *See id.* ¶¶ 34-45.
22 *Id.* ¶ 47.
23 *See generally* Doc. 9.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[24] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[25] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[26]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[27] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[28] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[29] Finally, the court must review the presumed-truthful allegations

---

24 *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

25 *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

26 *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

27 *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

28 *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

29 *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[30] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[31]

Because Mitchell proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[32] This is particularly true when the *pro se* litigant, like Mitchell, is incarcerated.[33]

## III. DISCUSSION

Mitchell's complaint alleges Eighth Amendment deliberate indifference to prisoner health and safety, sometimes referred to as a failure-to-protect claim.[34] He avers that Brittain was aware that SCI Frackville's cells did not contain proper fire-safety devices like an "operable manual alarm system, smoke damper, heat detector, [or] sprinklers."[35] Mitchell does not allege that Brittain was aware that his cell's electrical socket or wiring was defective or dangerous. Rather, he contends that, despite knowing that the prison's cells were not properly equipped with adequate fire-safety devices, Brittain failed to implement "customs, polic[ies], or practices" to mitigate the purported dangerous condition that caused Mitchell's

---

30 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
31 *Iqbal*, 556 U.S. at 681.
32 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
33 *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
34 *See Dongarra v. Smith*, 27 F.4th 174, 178-79 (3d Cir. 2022).
35 Doc. 1 ¶¶ 34, 38.

harm.[36] As such, Mitchell appears to be relying on a theory of supervisory liability with respect to his failure-to-protect claim against Brittain.

**A. Individual Capacity Claim**

To state an Eighth Amendment claim against a prison official for deliberate indifference to inmate health or safety, the inmate must plausibly plead that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[37] In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[38] Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[39]

As explained above, Mitchell does not allege direct involvement by Brittain in the electrical fire incident or its aftermath. This is important because it is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[40] Thus, supervisors cannot be held liable

---

36 *Id.* ¶¶ 41, 43-45.

37 *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

38 *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

39 *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

40 *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

for the constitutional torts of their subordinates simply because of their supervisory position.[41]

Supervisors, nevertheless, may be liable under Section 1983 in certain circumstances, including for failing to implement a policy or procedure.[42] And this is the essence of Mitchell's complaint against Brittain. To establish such a claim, the plaintiff must "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the [subordinate]'s violation resulted from the supervisor's failure to employ that supervisory practice or procedure."[43]

Viewed through the lens of these pleading requirements, Mitchell's supervisory liability claim falls short in several respects. First, Mitchell's complaint does not identify the specific practice or procedure that Brittain failed to employ. Mitchell broadly alleges that Brittain did not "adequately provide a safe living and working inviroment [sic] for all inmates."[44] But this allegation is far too general to plausibly state a missing practice or procedure.

---

41 *Iqbal*, 556 U.S. at 676.
42 *See Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001).
43 *Id.* (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).
44 Doc. 1 ¶ 41.

Presumably, Mitchell intends to allege that the practice or procedure that Brittain failed to implement was outfitting SCI Frackville's cells with proper fire-safety mechanisms like a manual alarm system, smoke damper, heat detector, or sprinklers. But the Court declines to speak for Mitchell by drafting what is arguably the most critical component of his supervisory liability claim.

Even if Mitchell had set forth the more specific absent procedure that the Court presumes above, his complaint would still fail to state a claim for relief. That is because Mitchell has not adequately pled how the failure to implement this procedure created an unreasonable risk of his ultimate injury or how Brittain was aware of and deliberately indifferent to this risk.

Mitchell contends that, after the incident, he was forced to continue living in a smoke-filled cell where he "suffered by inhaling smoke and fumes for months."[45] He also appears to assert that he suffered emotional and psychological injuries from the fear of another electrical fire because the cells lacked adequate fire-safety and prevention devices. As to the former claimed injury, it is implausible that an electrical outlet was permitted to emit smoke and fumes into Mitchell's cell "for months" without any action being taken by prison officials. Even if this is what Mitchell is alleging, his complaint does not explain how fire-safety devices (like a manual alarm or sprinklers) would mitigate this purported dangerous condition. It

---

[45] *Id.* ¶¶ 30-31.

would be strange indeed if prison officials allowed fire alarms or sprinklers to be activated repeatedly rather than simply fix a malfunctioning electrical outlet.

As to his alleged emotional and psychological injuries, which appear to be the primary injuries complained of, Mitchell fails to plead how Brittain was aware of the risk of such injuries and was deliberately indifferent to that risk.[46] Put differently, Mitchell has not pled facts that would establish that Brittain was aware that the absence of certain fire-safety devices would result in psychological injury to inmates (rather than, for example, physical injury from a fire) and that Brittain deliberately ignored this risk.[47]

In sum, the Court declines to speculate about what Mitchell is actually claiming in his civil rights complaint. Instead, the Court will dismiss Mitchell's deficient supervisory liability claim but grant leave to amend so that he can set forth, in his own words, the exact contours of his claim against Brittain.

---

46 In his brief in opposition to the motion to dismiss, Mitchell claims that Brittain was aware of prior fires that had occurred in other inmates' cells at SCI Frackville. *See* Doc. 14 at 6. First, it is well settled that Mitchell cannot amend his pleadings through a brief in opposition to a motion to dismiss. *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Second, even if these allegations were included in Mitchell's complaint, they still would not cure the deficiency identified here because they only address the risk of a fire, not the risk of emotional or psychological injuries from the fear of a future fire.

47 *Cf. Dongarra*, 27 F.4th at 181 (explaining that primary potential harm of plaintiff's failure-to-protect claim—physical assault by other prisoners—was markedly different than secondary risk plaintiff was asserting regarding "emotional and psychological harms" from being branded a sex offender and constantly fearing a physical assault that did not materialize).

### B. Official Capacity Claim

Mitchell also sued Brittain in her official capacity.[48] However, official capacity claims seeking monetary damages from state officials are barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[49] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[50] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[51] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[52]

---

48 *See* Doc. 1 ¶ 2.

49 U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

50 *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

51 *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

52 *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

Mitchell seeks $30,000 in compensatory damages from Brittain. His official capacity claim against her, therefore, is barred by Eleventh Amendment sovereign immunity and must be dismissed.

## IV. LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[53] Because it does not appear from the face of Mitchell's pleadings that amendment would be futile, the Court will grant him leave to amend. If Mitchell chooses to file an amended complaint, he must address the multiple deficiencies identified herein.

## V. CONCLUSION

Based on the foregoing, the Court will grant Defendant's motion to dismiss as to Mitchell's individual capacity claim. Dismissal of this claim will be without prejudice. The Court will also *sua sponte* dismiss Mitchell's official capacity claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

53 *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).