IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE R. MITCHELL, | No. 4:22-CV-00619 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| (SUPT) K. BRITTAIN, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

NOVEMBER 2, 2023

Plaintiff Leslie R. Mitchell is currently confined at the State Correctional Institution in Frackville, Pennsylvania (SCI Frackville). He filed the instant *pro se* Section 1983[1] action, claiming that the superintendent of that prison violated his Eighth Amendment rights. His initial complaint was dismissed for failure to state a claim but he was granted leave to amend. Mitchell filed an amended complaint raising the same claims but naming additional defendants. Presently pending is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion to dismiss and will also *sua sponte* dismiss Mitchell's amended complaint for failure to exhaust administrative remedies.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.  **BACKGROUND**

According to Mitchell, on the evening of October 18, 2021, he was lying down on his bed when smoke began to fill his cell.[2] He recalls that he turned over and saw fire coming out of an electrical socket and an extension cord that was plugged into the socket.[3] Mitchell alleges that he "immediately pulled the extension cord out of the socket" and "jumped into action" to put out the fire by trying to smother it with clothing that was hanging nearby.[4] Mitchell's cellmate called for assistance, and eventually a correctional officer, the block sergeant, and two security officers arrived at Mitchell's cell.[5] The correctional officer arrived first, letting Mitchell and his cellmate out of the cell.[6] One of the two security officers, who arrived last, brought a video camera and recorded the event.[7]

Eventually the fire was extinguished. The security officers then confiscated several items (a burnt robe, a burnt and melted extension cord, and an amplifier) and—after being asked by the inmates for grievance forms—told Mitchell and his cellmate that any grievances they wished to file would have to wait until after an investigation was conducted.[8] Mitchell alleges that, after waiting months to hear about the results of the investigation, he submitted an inmate request form to

---

[2]  Doc. 23 ¶¶ 8, 9, 11.
[3]  *Id.* ¶ 12.
[4]  *Id.* ¶¶ 13-15.
[5]  *Id.* ¶¶ 15-18.
[6]  *Id.* ¶¶ 16-18.
[7]  *Id.* ¶ 18.
[8]  *Id.* ¶¶ 19-21; Doc. 23-1.

defendant Superintendent Kathy Brittain and the security department to inquire about the investigation and to recover his confiscated property.[9]  Mitchell asserts that he did not receive a response to this request.[10]

On December 23, 2021, Mitchell filed a formal grievance (form DC-804 Part 1).[11]  He attached a "true and correct copy" of this grievance as an exhibit to the amended complaint.[12]  In the grievance, he describes the fire and the events surrounding it much like the incident is described in his pleadings.[13]  He does not, however, state what type of claim he is asserting (if any), against whom he is asserting it, or what relief he is seeking from prison officials.[14]

Approximately two months later, grievance coordinator J. Newberry denied Mitchell's grievance as untimely.[15]  Mitchell claims he responded by submitting a request form to Newberry, explaining that he and his cellmate immediately requested grievance forms but were told by security that they could not file grievances until after the investigation was completed, so that is why his grievance was not filed until several months after the incident.[16]  Mitchell does not explain

---

[9]  Doc. 23 ¶¶ 22-23.
[10] *Id.* ¶ 23.
[11] *See id.* ¶ 24.  Mitchell claims that he filed his grievance on December 23, 2021, but the response from the grievance coordinator states that the grievance was not filed until January 10, 2022.  *See* Doc. 23-2 at 2.  At the Rule 12(b)(6) stage, the plaintiff's allegations must be taken as true, so the Court will use the filing date Mitchell provided.
[12] *See* Doc. 23-2 at 1.
[13] *See id.*
[14] *See id.*
[15] *See* Doc. 23-2 at 2.
[16] Doc. 23 ¶¶ 26-27.

3

the outcome of this request to staff member. Nor did Mitchell appeal the initial grievance denial to the Facility Manager or to final review with the Secretary's Office of Inmate Grievances and Appeals (SOIGA).

Mitchell alleges that, after the incident, he was "forced to continue living in the smoke[-]filled cell" where he was subjected to smoke and fumes "for months."[17] Mitchell does not explain whether the electrical socket was still malfunctioning and emitting smoke, or if his cell simply continued to smell like smoke after the October 18 incident. In any event, he avers that, following the incident, he experienced "heightened anxiety, fear, tightness in his chest, muscle pain, inability to sleep, depression, and hyper[]tension"; had to seek "psychological help" from a prison doctor; and was diagnosed with depression and anxiety.[18]

In his initial complaint, Mitchell named only superintendent Brittain as a defendant. In his amended complaint, he again names Brittain, but also includes SCI Frackville Safety Manager Jeffrey Newhard and former Central Office Safety and Environmental Chief Robert McSurdy, suing all Defendants in their individual and official capacities.[19] He brings a single Section 1983 claim against Defendants that appears to sound in Eighth Amendment deliberate indifference to prisoner

---

[17]  *Id.* ¶ 32.
[18]  *Id.* ¶¶ 33-34, 39-40.
[19]  *See id.* ¶¶ 2-4.

health and safety.[20]  In his original complaint, he sought compensatory damages of $30,000 from Brittain.[21]  Notably, he does not include any request for relief in his amended complaint.[22]

Defendants move to dismiss Mitchell's amended complaint under Federal Rule of Civil Procedure 12(b)(6).[23]  Defendants' motion is fully briefed and ripe for disposition.

## II.     STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[24]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[25]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as

---

[20] *See* Doc. 23 at pp. 5-6 (asserting a single count labeled "42 U.S.C. § 1983 Hazard Conditions" against all Defendants); *see id.* ¶¶ 43, 46, 49 (citing Eighth Amendment).
[21] Doc. 1 ¶ 47.
[22] *See generally* Doc. 23.
[23] *See generally* Doc. 32.
[24] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[25] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

5

undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[26]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[27] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[28] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[29] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[30] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[31]

Because Mitchell proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[32] This is particularly true when the *pro se* litigant, like Mitchell, is incarcerated.[33]

---

[26] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[27] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[28] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[29] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[30] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[31] *Iqbal*, 556 U.S. at 681.
[32] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[33] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Mitchell's amended complaint, which is practically a carbon copy of his original complaint, alleges Eighth Amendment deliberate indifference to prisoner health and safety, sometimes referred to as a failure-to-protect claim.[34] He avers that Defendants were aware that SCI Frackville's cells did not contain proper fire-safety devices like "operative manual alarm systems, smoke damper[s], heat detectors, [or] sprinklers,"[35] which he contends are necessary for inmate safety.[36] Mitchell does not allege that Defendants were aware that his cell's electrical socket or wiring was defective or dangerous or that they were deliberately indifferent to such a risk.  Rather, he ambiguously contends that Defendants either "failed to take measures to stop or limit the customs, policys [sic], and practices" that caused his harm, or they failed to implement "policys [sic] or practices" that would have prevented his harm.[37]  Mitchell thus appears to be relying on a theory of supervisory liability with respect to his failure-to-protect claim.

### A.   Individual Capacity Claims

To state an Eighth Amendment claim against a prison official for deliberate indifference to inmate health or safety, the inmate must plausibly plead that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the

---

[34] *See Dongarra v. Smith*, 27 F.4th 174, 178-79 (3d Cir. 2022).
[35] Doc. 23 ¶¶ 29, 37.
[36] *Id.* ¶ 41.
[37] *Id.* ¶¶ 48-49.

7

official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[38] In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[39] Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[40]

As explained above, Mitchell does not allege direct involvement by any Defendant in the electrical fire incident or its aftermath. This is important because it is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[41] Thus, supervisors cannot be held liable for the constitutional torts of their subordinates simply because of their supervisory position.[42]

Supervisors, nevertheless, may be liable under Section 1983 in certain circumstances, including for failing to implement a policy or procedure.[43] And this appears to be the essence of Mitchell's amended complaint. To plausibly plead

---

[38] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).
[39] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[40] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).
[41] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).
[42] *Iqbal*, 556 U.S. at 676.
[43] *See Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001).

such a claim, the plaintiff must "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the [subordinate]'s violation resulted from the supervisor's failure to employ that supervisory practice or procedure."[44]

Viewed through the lens of these pleading requirements, Mitchell's supervisory liability claim again falls short in several respects. Initially, Mitchell's amended complaint does not clearly identify the specific practice or procedure that Defendants failed to employ. Mitchell vaguely and repeatedly alleges that Defendants "failed to provide a reasonable [sic] safe living enviroment [sic]" for him[45] and that Defendants "did inadequately provide a [sic] unsafe living enviroment [sic] for all inmates."[46] But such broad allegations are far too general to plausibly state a missing practice or procedure.

It appears that Mitchell intends to allege that the policy or practice that Defendants failed to implement was outfitting SCI Frackville's cells with fire-safety mechanisms like manual alarm systems, smoke dampers, heat detectors, and

---

[44] *Id.* (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).
[45] Doc. 23 ¶¶ 38, 39, 42.
[46] *Id.* ¶ 45.

sprinklers.[47] But, as with his original complaint, Mitchell has not adequately pled how the failure to implement this policy or procedure created an unreasonable risk of his ultimate injury or injuries or how Defendants were aware of and deliberately indifferent to this risk.

Mitchell contends that, after the incident, he was forced to continue living in a smoke-filled cell where he "suffered by inhaling smoke and fumes for months."[48] He also appears to assert that he suffered emotional and psychological injuries from the fear of another electrical fire because the cells lacked adequate fire-safety and prevention devices. As to the former claimed injury, it is highly implausible that an electrical outlet was permitted to emit smoke and fumes into Mitchell's cell "for months" without any responsive action by prison officials. Even if this allegation is taken as true, Mitchell's amended complaint does not assert that Defendants were aware of this issue and were deliberately indifferent to it.

As to his alleged emotional and psychological injuries, which appear to be the primary injuries complained of, Mitchell likewise fails to plead how Defendants were aware of the risk of such injuries and were deliberately

---

[47] *See id.* ¶¶ 29-30; *see also* Doc. 36 ¶¶ 62, 98, 99. In his brief in opposition to the motion to dismiss, Mitchell includes other alleged policy failures by Defendants. *See* Doc. 36 ¶¶ 61-62. But as Mitchell has already been admonished, (*see* Doc. 19 at 10 n.46), it is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss. *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). Furthermore, even if these allegations were included in the amended complaint, they were never raised with prison officials and thus were never administratively exhausted. *See infra* Section III(C).

[48] *Id.* ¶ 31.

indifferent to that risk. Put differently, Mitchell has not pled facts that would establish that Defendants were aware that the absence of certain fire-safety devices would result in *psychological* injury to inmates (rather than, for example, physical injury from a fire) and that Defendants deliberately ignored this risk.[49]

In sum, Mitchell's individual liability claims fail because he has not pled, plausibly or otherwise, that: (1) the absence of a policy or practice Defendants failed to employ created an unreasonable risk of Mitchell's ultimate injury (at least with respect to the alleged psychological injuries); (2) Defendants were aware of that risk; or (3) Defendants were deliberately indifferent to that risk.

### B.   Official Capacity Claims

Mitchell also sues Defendants in their official capacities.[50] In his amended complaint, he does not identify what relief he is seeking, if any. Nevertheless, the Court once more notes that any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[51] This immunity from private suit extends to state

---

[49] *Cf. Dongarra*, 27 F.4th at 181 (explaining that primary potential harm of plaintiff's failure-to-protect claim—physical assault by other prisoners—was markedly different than secondary risk plaintiff was asserting regarding "emotional and psychological harms" from being branded a sex offender and constantly fearing a physical assault that did not materialize).

[50] *See* Doc. 23 ¶¶ 2-4.

[51] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[52] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[53] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[54]

Accordingly, any official capacity claim seeking monetary damages is barred by Eleventh Amendment sovereign immunity, although Mitchell does not request such relief in his amended complaint. Mitchell does not seek prospective injunctive relief, either. His official capacity claims, therefore, must be dismissed for failure to state a claim upon which relief may be granted.

### C. Administrative Exhaustion

Mitchell fails to state a claim for relief for an additional reason that Defendants do not raise. It is apparent from the face of Mitchell's amended complaint and attached exhibits that he did not assert, let alone exhaust, any of the policy-based Eighth Amendment claims he is attempting to pursue in federal court.

---

[52] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[53] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[54] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

The Prison Litigation Reform Act of 1995 (PLRA)[55] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.[56] Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[57] The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[58]

Pennsylvania's Department of Corrections (DOC) employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases.[59] If informal resolution attempts do not solve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."[60] An adverse decision by the grievance coordinator must be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[61] Finally, an adverse decision by the Facility

---

[55] 42 U.S.C. § 1997e *et seq.*
[56] *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).
[57] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).
[58] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.
[59] *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").
[60] DC-ADM 804 § 1(A)(3)-(5).
[61] *Id.* § 2(A)(1).

Manager must be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[62]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[63]

The Court will assume, without deciding, that Mitchell's grievance (#963212) was fully exhausted even though he did not appeal to the Facility Manager or seek final review with the SOIGA. Mitchell avers that he was misled into believing that he had to wait to file a grievance until the investigation was completed and then, when he did file his grievance, it was rejected as untimely. Under these facts, Mitchell's failure to appeal his grievance denial to the Facility Manager and to the SOIGA could possibly be excused.

However, just because that particular grievance was exhausted does not mean that Mitchell's Eighth Amendment failure-to-protect claims were. His

---

[62] *Id.* § 2(B)(1).
[63] *Id.* § 1(A)(11).

grievance, in fact, is fatally deficient in numerous respects. First, Mitchell does not identify any prison official (or even a job position) as being responsible for the electrical fire or for the absence of fire-safety devices. None of instant Defendants are identified or even hinted at in the grievance.[64] Second, Mitchell does not raise any type of claim related to a policy or practice at SCI Frackville (or lack thereof) involving "fire safety and prevention devices."[65] And that is the gravamen of his entire lawsuit. Third, Mitchell does not seek any relevant relief in the grievance, such as monetary compensation or injunctive relief. Under even the most liberal construction, the grievance at most seeks return of confiscated property.

Accordingly, from the face of Mitchell's amended complaint, it is clear that he failed to exhaust his administrative remedies for the Eighth Amendment claims asserted in this Section 1983 action.[66] Mitchell never raised a claim regarding the absence of fire-safety devices to prison administrators such that they could review his claim and rectify any infrastructure deficiencies found to exist. This is, after all, the point of the administrative exhaustion process.[67] Furthermore, Mitchell

---

[64] As the United States Court of Appeals for the Third Circuit has admonished, "The purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004) (citing an older version of DC-ADM 804 related to defendant identification in grievances).

[65] Doc. 23 ¶ 30.

[66] *See Ball v. Famiglio*, 726 F.3d 448, 460 (3d Cir. 2013) (explaining that when failure to exhaust is apparent from the face of the complaint, complaint can be dismissed for failure to state a claim for relief), *abrogated in part by Coleman v. Tollefson*, 575 U.S. 532 (2015).

[67] *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (explaining that PLRA's exhaustion requirement reduces "the number of meritless inmate lawsuits challenging prison conditions" by "returning control of the inmate grievance process to prison administrators,

never sought monetary damages or injunctive relief in his grievance, thus precluding such relief in federal court.[68] The amended complaint, therefore, must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failure to state a claim upon which relief may be granted.[69]

The Court makes one final observation. It is apparent that Mitchell believes that SCI Frackville lacks certain critical fire-safety and prevention infrastructure.[70] He repeatedly asserts in his opposition brief that inmates need not wait until actual injuries or casualties occur from fire-safety lapses before seeking relief from such conditions.[71] True enough. But if Mitchell desires to have the DOC undertake corrective measures with respect to fire safety at SCI Frackville (or if he believes that certain state regulations or policies are being flouted), he must follow the legal framework for requesting this type of significant injunctive relief. That process would begin, as it must, at the administrative level. Only after he has properly presented his constitutional claims to prison administrators and exhausted the administrative process can he turn to a civil rights lawsuit in federal court.[72]

---

encouraging the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reducing the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits" (internal quotation marks and citation omitted)).

[68] That is, of course, assuming that Mitchell is seeking such relief, as his amended complaint is silent as to his requested relief as well.
[69] See Ball, 726 F.3d at 460.
[70] See, e.g., Doc. 36 ¶ 66 (alleging that SCI Frackville is violating state law and regulations with regard to fire safety).
[71] See id. ¶ 49 (quoting Hoptowit v. Spellman, 753 F.2d 779, 783-84 (9th Cir. 1985)).
[72] See 42 U.S.C. § 1997e(a).

## IV. LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[73] Leave to amend will be denied as futile because Mitchell has failed to cure deficiencies after "amendments previously allowed."[74] It is also apparent from the face of the amended complaint that Mitchell failed to exhaust administrative remedies regarding any sort of Eighth Amendment claim stemming from the October 2021 incident, so his case must be dismissed with prejudice for failure to state a claim.

## V. CONCLUSION

Based on the foregoing, the Court will grant Defendant's motion to dismiss. The Court will also independently dismiss Mitchell's amended complaint for failure to exhaust administrative remedies. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[73] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).
[74] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").